## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **BRIAN SMITH; and ROSEANN MIRACOLA, SCOTTY POARCH, and MARK YOUNG, on behalf of themselves and those similarly situated persons,**<br><br>    **Plaintiffs,**<br>**v.**<br><br>**KELLOGG COMPANY and KELLOGG SALES COMPANY,**<br><br>    **Defendants.** | **1:18-cv-01341-PLM-RSK**<br><br>**District Judge Paul L. Maloney**<br>**Magistrate Judge Ray Kent** |

## JOINT MOTION FOR PRELIMINARY APPROVAL OF FAIR LABOR STANDARDS ACT SETTLEMENT AND TO AUTHORIZE NOTICE OF SETTLEMENT TO PLAINTIFFS AND FLSA COLLECTIVE ("JOINT MOTION")

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   FACTS ...................................................................................................................3

    A.   Initial Complaint and Motion Practice in the District of Nevada ................... 3

    B.   Motion Practice in the Western District of Michigan ...................................... 6

    C.   Mediation and Settlement ............................................................................... 7

    D.   Settlement Agreement ..................................................................................... 9

III.  LEGAL STANDARD ........................................................................................12

    A.   Notice to Putative Class ................................................................................ 13

    B.   Notice to Opt-ins .......................................................................................... 13

        1.   Notice Form .......................................................................................... 14

        2.   Service Awards ..................................................................................... 14

        3.   Attorneys' Fees and Costs ................................................................... 15

    C.   Preliminary Approval of the FLSA Settlement ............................................ 16

        1.   A Bona Fide Dispute Exists Between the Parties ................................. 16

        2.   The Proposed Settlement Is Fair and Reasonable ................................ 17

          a.   Plaintiffs' Range of Possible Recovery is Wide and the Risks of Litigation are Serious .................................................................. 17

          b.   The Parties Avoid Massive Burdens and Expenses with This Settlement ................................................................................... 19

          c.   The Settlement is the Product of Arms-Length Bargaining, Negating the Possibility of Fraud or Collusion ............................. 20

IV.   CONCLUSION ..................................................................................................20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.H. Phillips v. Walling*,
  324 U.S. 490 (1945).....................................................................................................15

*Alyeska Pipeline v. Wilderness Soc'y*,
  421 U.S. 240 (1975).....................................................................................................15

*In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*,
  06 Civ. 17430-WYD-CBS, 2010 WL 9593848 (D. Colo. Oct. 6, 2010)................................13

*Barnes v. Winking Lizard, Inc.*,
  No. 18-cv-952, 2019 WL 1614822 (N.D. Ohio Mar. 26, 2019)............................................15

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
  450 U.S. 728 (1981).....................................................................................................12

*Brown v. AK Lawncare, Inc.*,
  No. 14-cv-14158, 2017 WL 1950988 (E.D. Mich. May 11, 2017) ................................16, 17

*Brueningsen v. Resort Express Inc.*,
  2:12 Civ. 843-DN, 2016 WL 10537003 (D. Utah May 23, 2016)........................................13

*Collins v. Sanderson Farms, Inc.*,
  568 F. Supp. 2d 714 (E.D. La. 2008).................................................................................16

*Daoust, v. Maru Rest., LLC*,
  No. 17-cv-13879, 2019 WL 2866490 (E.D. Mich. July 3, 2019)..........................................14

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)....................................................................................................5

*Espenscheid v. DirectSat USA, LLC*,
  688 F.3d 872 (7th Cir. 2012) .........................................................................................14

*Fegley v. Higgins*,
  19 F.3d 1126 (6th Cir. 1994) .........................................................................................15

*Goldsby v. Renosol Seating, LLC*,
  2:08-0148-KD-N, 2013 WL 6535253 (S.D. Ala. Dec. 13, 2013)..........................................13

*Hadix v. Johnson*,
  322 F.3d 895 (6th Cir. 2003) .........................................................................................14

*Hainey v. Parrot*,
    617 F. Supp. 2d 668 (S.D. Ohio 2007) ...................................................................20

*Hemphill v. San Diego Ass'n of Realtors*,
    225 F.R.D. 616 (S.D. Cal. 2005) ...........................................................................20

*Hodge v. Signia Mktg., Ltd.*,
    15 Civ. 02839-KMT, 2017 WL 5900344 (D. Colo. Nov. 30, 2017) ......................13

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989).................................................................................................13

*Hosier v. Mattress Firm, Inc.*,
    3:10 Civ. 294-J-32JRK, 2011 WL 7071062 (M.D. Fla. Dec. 29, 2011) ...............13

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982): (1)...........................................................3, 13, 16

*Martin v. Spring Break '83 Prods., L.L.C.*,
    688 F.3d 247 (5th Cir. 2012) *cert. denied,* 568 U.S. 1069 (2012)..........................13

*McFarlin v. Word Enters., LLC*,
    No. 16-cv-12536, 2020 WL 2745300 (E.D. Mich. May 27, 2020) ........................14

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................................14

*Thomas v. Kellogg Co.*,
    3:13 Civ. 05136-RBL, Doc. 535 (W.D. Wash. March 28, 2018) ...........................13

*Tommey v. Computer Scis. Corp.*,
    11 Civ. 02214-EFM, 2015 WL 1623025 (D. Kan. Apr. 13, 2015).........................13

*In re Toys R Us Antitrust Lit.*,
    191 F.R.D. 347 (E.D.N.Y. 2000) ...........................................................................20

*United Slate, Tile & Composition Roofers, Local 307 v. G&M Roofing & Sheet Metal Co.*,
    732 F.2d 495 (6th Cir. 1984) .................................................................................15

*Welch v. Big Boy Rests. Int'l, LLC*,
    No. 18-cv-11222, 2018 WL 4745502 (E.D. Mich. Oct. 2, 2018)...........................16

*Westley v. CCK Pizza Co.*,
    18 Civ. 13627, 2019 WL 5653403 (E.D. Mich. Oct. 31, 2019) ............................20

*Williams v. Alimar Sec., Inc.*,
    13 Civ. 12732, 2016 WL 6405798 (E.D. Mich. Oct. 31, 2016) ......................16, 17

*Williams v. K&K Assisted Living LLC*,
   No. 15-cv-11565, 2016 WL 319596 (E.D. Mich. Jan. 27, 2016) ...........................................16

**Statutes**

29 U.S.C. § 202(a) ............................................................................................................12

29 U.S.C. § 215(b) ............................................................................................................13

29 U.S.C. § 216 ..................................................................................................................3

**Rules**

Rule 23 ...............................................................................................................................14

**Other Authorities**

https://www.fjc.gov/sites/default/files/2016/ClaAct11.pdf ............................................14

## I.   INTRODUCTION

The Named Plaintiffs and Kellogg have signed the settlement agreement, attached as Exhibit A, resolving this Fair Labor Standards Act (FLSA) case on behalf of the 3 Named Plaintiffs, 74 opt-in Plaintiffs (Opt-in Plaintiffs), and approximately 1,700 putative FLSA collective members who do not already have a pending consent to sue in the case (Putative FLSA Collective Members) (collectively, Federal Plaintiffs). To bring this case to a close, the Parties respectfully request the Court:

1) Authorize Plaintiffs to issue the Notice and Claim Form in Exhibit A-3 to the members of the FLSA Collective;

2) Authorize Plaintiffs to issue the Notice in Exhibit A-4 to the existing Opt-In Plaintiffs;

3) Set a date for the Final Fairness Hearing; and

4) Enter the Order attached as Exhibit B.

After more than three years of extensive discovery, numerous motions, two mediations, and contested litigation—much but not all of which occurred in parallel individual arbitrations—the Parties agreed to settle this federal court case for $1,851,689.56, plus reasonable attorneys' fees and costs. This settlement resolves the overtime claims of those who worked in the Kellogg Sales Representative and similar positions (collectively, KSRs) and were classified as exempt from the overtime pay requirements of the Fair Labor Standards Act (FLSA) between July 13, 2014 and August 18, 2017.[1]

The three Named Plaintiffs, 74 Opt-In Plaintiffs, and any of the approximately 1,700 Putative FLSA Collective Members who opt into the settlement will resolve their claims before

---

[1] The Parties settled this federal court case in conjunction with the settlement of forty individual arbitration demands filed with JAMS by KSRs represented by Plaintiffs' Counsel. The Parties are processing the settlement of the individual arbitration demands in JAMS. Should the Court desire to know the details of these separate settlements, the Parties are willing to inform the Court fully, although Kellogg would request it be done in camera to preserve the confidentiality of certain portions of the settlement(s).

this Court in exchange for settlement payments totaling $1,851,689.56, exclusive of attorneys' fees and costs.[2] Because this amount excludes attorneys' fees and costs, and because none of the $1,851,689.56 will be used to pay Plaintiffs' Counsel, Plaintiffs may separately file a petition for an award of reasonable attorneys' fees and costs.

Before payment is issued to the Federal Plaintiffs and the claims are released, however, the Parties have agreed to use a two-step Court-approval process. First, in this motion, they jointly ask the Court to approve the form and the mailing of the Notice in Exhibit A-3 to the Putative FLSA Collective Members. The Notice informs the Putative FLSA Collective Members about the settlement, its terms, their respective estimated individual recoveries, and their options—including the right to opt into the case, and thereby opt into the settlement, within the Notice period. If approved, the Settlement Administrator will mail the Notice in Exhibit A-3 to the Putative FLSA Collective Members.

For the 74 Opt-In Plaintiffs, the Parties jointly ask the Court to approve the form of the Notice in Exhibit A-4. The proposed Notice informs the Opt-In Plaintiffs about the settlement, the amount of their respective individual recoveries, and of their options—including the right to object or to opt out of the case, and thereby opt out of the settlement, within the Notice period. If the Notice is approved, Plaintiffs' Counsel will mail and/or email the Notice in Exhibit A-4 to the Opt-In Plaintiffs.

It is important that the Court authorize both Notices for two reasons. First, because the Putative FLSA Collective Members have never received notice of this case, the Notice in Exhibit A-3 will inform them of their right to participate in the settlement and to recover their settlement share. Second, for those who already have joined, the Notice to Opt-In Plaintiffs in Exhibit A-4

---

[2] Of this amount, $1,106,971.75 is allocated to the Named and Opt-In Plaintiffs. This is referred to as Fund A in the Notice Form. If any Opt-In Plaintiffs opt out, their share will be reallocated to the Settlement Administrator, and, upon satisfaction of those administrative expenses, any excess will revert to Kellogg. The remainder of the Fund, approximately $687,217.80, is allocated to the Putative FLSA Collective Members. This amount is referred to a Fund B in the Notice form. The Declaration of Michael Russo more thoroughly describes the allocation.

protects their due process rights, because some courts have rejected FLSA settlements that bind opt-ins if those opt-ins do not receive notice of the settlement and the opportunity to object.

After the Notice period expires, the Parties will move for final approval of the settlement, including service awards to the Named Plaintiffs as well as an award of attorneys' fees and costs.[3] Because this is not a supervised U.S. Department of Labor settlement, the Parties ask the Court to review and approve this settlement to effectuate it. Courts evaluate FLSA settlements under the standard set forth in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982): (1) the FLSA settlement must involve the resolution of a bona fide dispute over an FLSA provision, and (2) the settlement must be fair and reasonable. If the settlement meets both criteria, then courts approve the settlement. Upon approval, and assuming there are no appeals, settlement checks will be mailed to the Federal Plaintiffs, and the Federal Plaintiffs will release their wage and hour claims.

Plaintiffs also may ask the Court to award reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216. Plaintiffs will file any such motion with the Court no later than seven days before the deadline for Putative FLSA Collective Group Members to opt into this action. Kellogg may oppose Plaintiffs' motion. Under any scenario, the Court's decision on fees and costs will not impact the amount the Federal Plaintiffs recover because any award would be in addition to the $1,851,689.56 settlement amount.

Overall, this is a substantial settlement on behalf of the 77 Named and Opt-in Plaintiffs and Putative FLSA Collective Members who have the option to participate in the settlement upon receipt of Notice. The Parties request that the Court grant this motion and preliminarily approve their settlement.

## II.    FACTS

### A.    Initial Complaint and Motion Practice in the District of Nevada

---

[3] Per the Settlement Agreement, Plaintiffs' Counsel are to file any petition for fees and costs no less than seven calendar days before the close of the opt-in period.

The Original Named Plaintiff, Brian Smith, filed this case over three years ago as an FLSA collective action in the District of Nevada. He brought this case on behalf of former Kellogg KSRs who worked in Kellogg's snacks division, were paid a salary, were classified by Kellogg as exempt from overtime pay under the FLSA, and were not paid overtime wages for hours worked over 40 hours in a workweek. Dunn Decl. ¶ 3.[4] Also at that time, Kellogg and Counsel for both Parties were litigating a similar FLSA collective action in the Western District of Washington, *Thomas v. Kellogg Co. and Kellogg Sales Co.*, involving 750 KSRs. Mr. Smith and many other KSRs did not participate in the *Thomas* case. Dunn Decl. ¶¶ 4-5. In fact, Mr. Smith did not receive the court-authorized notice of the *Thomas* case because he did not begin working for Kellogg in a covered position until after the notice was issued. Because he and many other Kellogg KSRs still had live FLSA claims that they could not pursue in *Thomas*, Mr. Smith initiated a parallel action on behalf of himself and others whose claims were not covered by the *Thomas* case.

When Mr. Smith initiated the case, Kellogg was in the process of restructuring its retail snacks product distribution model, and with it, restructuring its in-store retail workforce. *Id.* at ¶ 7. Because of these changes, Kellogg reduced the number of KSRs it employed, and many KSRs lost their jobs in or around August 2017. Those who continued to work for Kellogg stayed on in new positions and experienced changes to their job duties and work hours. *Id.* For those reasons, Plaintiffs eventually limited their claims in this case to the time before Kellogg changed its retail snacks product distribution model, and thus the claims run only through August 2017.[5]

In conjunction with Kellogg's restructuring its workforce, Kellogg issued a form Continued Employment/Incentive Agreement (Continued Employment Agreement) in or around

---

[4] Declaration of Matt Dunn in Support of Joint Motion for Preliminary Approval of Fair Labor Standards Act Settlement and to Authorize Notice of Settlement to Plaintiffs (Dunn Decl.).

[5] Plaintiffs did not evaluate potential FLSA overtime claims that may exist after August 18, 2017 as part of this settlement, though the release of claims will extend through the Court's preliminary approval of the settlement. Per the Settlement Agreement, if any individual comes forward before the close of the Notice period with potential FLSA overtime claims that post-date August 18, 2017, Plaintiffs' Counsel will assess the individual's potential claims, and if appropriate, the individual, by and through Plaintiffs' Counsel, and Kellogg will negotiate those claims in a good faith attempt to resolve them separately.

February 2017 to most then-current KSRs. Dunn. Decl. ¶ 8. In or around August 2017, Kellogg issued a form Separation Agreement and General Release (Separation Agreement) to any remaining KSRs whom Kellogg was laying off. Both Agreements contained individual arbitration provisions. According to Kellogg's records, approximately 855 of the Federal Plaintiffs signed an agreement containing an arbitration provision. Robertson Decl. ¶ 9 (Doc. 274).

Shortly after Mr. Smith served the complaint on Kellogg, the Parties engaged in motion practice over Kellogg's Continued Employment and Separation Agreements. Mr. Smith moved for a temporary restraining order (TRO) to prevent Kellogg from disseminating the Separation Agreement, which purported to prevent KSRs from resolving claims against Kellogg outside of individual arbitration (including in a collective action filed in federal court), a provision which Mr. Smith contended was illegal. The Parties appeared before the court in Nevada to argue the merits of Mr. Smith's TRO motion, which the court denied without prejudice. Dunn Decl. ¶¶ 9.

While Mr. Smith's motion for TRO was pending, Kellogg moved to compel Mr. Smith to individual arbitration. Mr. Smith opposed Kellogg's motion because the Supreme Court had not yet issued its decision in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018), and the Ninth Circuit had ruled that the NLRA rendered the mandatory agreements to arbitrate between an employer and employee unenforceable. The court ordered the parties to engage in discovery on the validity of the arbitration agreement, and it denied Kellogg's subsequent motion for reconsideration of that order as moot (Doc. 121) after the Parties engaged in document demands and interrogatories. Ultimately, after months of litigation and extensive briefing on the matter from both sides, the court stayed the proceedings, ordered Mr. Smith and Kellogg to arbitration to determine whether the claims were arbitrable, and retained jurisdiction over the case. Dunn Decl. ¶¶ 10.

Before the Court ordered the Parties to arbitration, Plaintiffs moved for conditional certification of the FLSA collective action and to issue notice to other KSRs of their rights to pursue unpaid overtime claims (Doc. 115). Due to the pendency of its motion to compel arbitration, Kellogg responded with an emergency motion to stay Plaintiffs' motion, which the Court granted (Doc. 118). When the court granted Kellogg's motion to compel arbitration, it denied without

prejudice Plaintiffs' motion for conditional certification. Thus, notice was not sent to putative class members and, without equitable tolling, the statute of limitations on their FLSA claims continued to run.

Mr. Smith then filed his individual demand in arbitration, and before JAMS assigned an arbitrator, the Supreme Court issued its decision in *Epic Systems*. In light of this ruling, Mr. Smith conceded the arbitrability of his claims, and Plaintiffs moved to amend the complaint to add three Named Plaintiffs to serve as class representatives (Doc. 183). Because Kellogg contested the District of Nevada's personal jurisdiction over Kellogg in this case, Plaintiffs also simultaneously moved to transfer the action to the Western District of Michigan (Doc. 185). Kellogg opposed both motions (Doc. 193 & 194), but in December 2018, the court granted Plaintiffs' motions and transferred the action to this Court (Doc. 206).

### B.    Motion Practice in the Western District of Michigan

Once the District of Nevada transferred the case to this Court, and less than one week after Kellogg answered the Amended Complaint (Doc. 226), Plaintiffs renewed their motion for conditional certification of the FLSA collective action (Doc. 227). In response, Kellogg moved to stay consideration of the collective action motion and for a period of class discovery. (Doc. 242). Plaintiffs opposed Kellogg's motion, but the court granted a period of 45 days for limited class discovery. (Doc. 257). The Court also tolled the statute of limitations on the FLSA Collective's claims during that discovery window.

In March 2019, Mr. Smith and Kellogg settled Mr. Smith's individual FLSA claim and Kellogg's counterclaims against Mr. Smith in individual arbitration before JAMS. Having successfully settled claims on behalf of Mr. Smith, the Parties were hopeful they could reach a global resolution on behalf of the Named and Opt-In Plaintiffs and the Putative FLSA Collective Members, as well as the claims of all the other KSRs with claims then-pending in individual arbitration. Thus, the Parties filed a stipulated motion to dismiss with prejudice Mr. Smith as a party and to adjourn all other deadlines in the case so the parties could engage in a mediation. (Doc. 263). The Court granted the stipulated motion (Doc. 264), and the Parties participated in

their first mediation, discussed further below. Following the unsuccessful mediation, the Parties engaged in class discovery—including 15 interrogatories, 15 document demands, and a deposition of each of the three Named Plaintiffs. After Kellogg completed its discovery, Kellogg opposed Plaintiffs' motion to conditionally certify the collective action (Doc. 272) and Plaintiffs filed their Reply (Doc. 276). In June 2020, the Parties successfully settled this matter before the Court issued a ruling on the motion to conditionally certify.

### C.    Mediation and Settlement

The Parties worked at arm's length and engaged in two formal mediations and extensive negotiations outside the confines of formal mediation to resolve this case and the remaining arbitrations. Those settlement negotiations were done with the guidance of the Honorable Gerald E. Rosen (Ret.), retired Chief Judge of the U.S. District Court for the Eastern District of Michigan, a seasoned and respected mediator. Dunn Decl. ¶ 17. The Parties first engaged in mediation in May 2019, shortly after Mr. Smith and Kellogg settled their respective claims.

As part of their agreement to engage in mediation, the Parties agreed Kellogg would produce certain data so Plaintiffs could adequately assess the value of the case. Once Kellogg produced that data, Plaintiffs prepared damages to share with Kellogg and prepared another set of damages for internal risk-assessment purposes. Dunn Decl. ¶ 21. To calculate damages for the Named and Opt-In Plaintiffs, Plaintiffs used Kellogg's pay records, Plaintiffs' employment history, the weeks Plaintiffs worked, their positions, and the average hours worked. Dunn Decl. ¶ 22. Plaintiffs' damage calculations incorporated the statute of limitations and FLSA liquidated damages. Kellogg also produced a limited set of data for the FLSA Collective, which included: Employee ID number, a representation about the number of weeks worked within the three-year FLSA statute of limitations from approximately January 16, 2019, a representation as to whether the employee signed an arbitration agreement, and whether the employee received notice in the *Thomas* matter. Then in advance of mediation, Plaintiffs provided their damage calculations to Kellogg. Dunn Decl. ¶ 23.

Plaintiffs used their internal damages spreadsheet to calculate the various litigation risks. Dunn Decl. ¶ 24. Some of the risks Plaintiffs considered include: whether Plaintiffs would prevail on all or part of their motion to conditionally certify the FLSA collective action; Kellogg's anticipated motion to decertify the collective action; Kellogg's defenses to paying overtime wages under the outside sales exemption, administrative exemption, and combination exemption; Plaintiffs' ability to prove that Kellogg willfully violated the FLSA; Kellogg's good faith defense to liquidated damages; Plaintiffs' ability to prove the case collectively; the method the Court would use to calculate damages; Kellogg's defenses to the hours Plaintiffs claimed they worked; and the risk of appeal. Dunn Decl. ¶ 24. For example, if Plaintiffs did not prove Kellogg willfully violated the FLSA, then many Plaintiffs would recover nothing or lose a substantial portion of their claims. Dunn Decl. ¶ 24. Or if Kellogg prevailed on their argument regarding the proper method of calculating damages, but Plaintiffs prevailed on everything else, Plaintiffs' recovery would reduce to approximately 25% of their total damages. Dunn Decl. ¶ 24. Alternatively, if Kellogg lost the case, then Kellogg would likely appeal, which would further delay and potentially jeopardize Plaintiffs' recovery. Dunn Decl. ¶ 24.

Plaintiffs also considered additional risks to the FLSA Collective members, including the possibility that the Court would not permit the issuance of Notice to those KSRs who had signed arbitration agreements. This limitation would reduce the class size to 728 putative FLSA Collective members, and 54% of the class would never receive Notice and likely would never bring their claims. Dunn Decl. ¶ 25. Even if the Court did permit notice to be issued to all FLSA Collective members, there was a risk that the Court would not toll the FLSA statute of limitations. Without tolling, the FLSA Collective's claims would have expired by August 2020, if not before, and they would recover nothing.

The first mediation with Judge Rosen, in May 2019, took place at JAMS' office in Detroit, Michigan. Dunn Decl. ¶¶ 16-17. Named Plaintiff Scotty Poarch and an Individual Arbitration Claimant both were present for the mediation, and the other two Named Plaintiffs were available by phone. Dunn Decl. ¶ 17. The mediation lasted all day and into the evening but was ultimately

unsuccessful. Dunn Decl. ¶ 17. Thereafter, the litigation continued, which included hearings in multiple individual arbitrations, all the while continuing negotiations, both through Judge Rosen and independently.

The Parties eventually agreed to engage in a second formal mediation with Judge Rosen in February 2020, this time at the New York JAMS office. Dunn Decl. ¶ 18. All three Named Plaintiffs were in contact with Plaintiffs' Counsel via phone. Dunn Decl. ¶ 18. Again, the mediation was unsuccessful, but the Parties continued to engage in settlement negotiations. Dunn Decl. ¶ 18. In the interim, several Arbitration Claimants settled their individual claims and Kellogg's counterclaims with Kellogg. Dunn Decl. ¶ 19. With each case that went to hearing in arbitration, and with each matter that settled, most often on the eve of the arbitration hearing, the Parties drew closer to a global settlement. Finally, in late June 2020, just before another arbitration hearing was set to begin, the Parties reached an agreement on a settlement amount and a rough outline of terms to settle these matters, including this case and the individual arbitrations, on a global basis. Dunn Decl. ¶ 20. Thereafter, the Parties engaged in continued negotiations to reach a finalized Term Sheet, including all material terms to settle these matters globally. Dunn Decl. ¶ 20.

The Named Plaintiffs were critical for mediations and settlement discussions. Importantly, they represented not only their own interests, but also the interests of the Opt-In Plaintiffs and the Putative FLSA Collective Members. Before the first mediation, the Named Plaintiffs, along with many of the Opt-In Plaintiffs participated in a conference call to discuss the mediation and risk calculations. Throughout the negotiation process, the Named Plaintiffs were involved in all decisions to accept or reject offers on behalf of the Opt-in Plaintiffs and Putative FLSA Collective Members. Dunn Decl. ¶ 26. The Named Plaintiffs have approved the settlement the Parties ultimately reached. Dunn Decl. ¶ 26.

**D.     Settlement Agreement**

The $1,851,689.56 settlement agreement provides Federal Plaintiffs with a significant recovery. Overall, the Named and Opt-In Plaintiffs will recover an average of more than $14,300

(Fund A). Dunn Decl. ¶ 32. Each of their individual recoveries is based on when they filed a consent to sue form, their pay, and the number of weeks they worked as a KSR within the relevant period. Participating Putative FLSA Collective Members will recover a total payment of $50 if they worked only a KSR-WH position, and all other KSRs will receive a base payment of $100 each. Those KSRs[6] who worked between January 16, 2016 and August 18, 2017 will recover a share for each week they worked (Fund B). And any KSR who previously filed and withdrew a consent to sue will receive an additional share amount for each week worked between January 16, 2016 and August 18, 2017. Because there is no reversion from Fund B to Kellogg, the shares of non-participating KSRs will be allocated on a pro-rata basis to those KSRs who worked between January 16, 2016 and August 18, 2017 and file a claim form. Putative FLSA Collective Members' respective recovery will increase if less than 100% of the Collective participates. This recovery is significant considering the risk that their claims may have lost all value due to the expiration of the statute of limitations.

All Named Plaintiffs have signed the Settlement Agreement. If the Court approves this motion, the Putative FLSA Collective Members will have the opportunity to join the case and the settlement, and the Opt-In Plaintiffs will have the opportunity to decide whether to remain in the case and participate in the settlement. Ultimately, if the settlement is approved, the Federal Plaintiffs will receive money for their unpaid overtime wages.

The Parties agreed to a joint notice process. The process will inform the Putative FLSA Collective Members about the case and the settlement and their options and notify the Opt-In Plaintiffs about the settlement and their options. After the Court approves the Notices, the Settlement Administrator will mail the approved Notice attached as Exhibit A-3 to all Putative

---

[6] Except for KSRs who worked in a KSR-WH only position.

FLSA Collective Members, and Plaintiffs' Counsel will mail and/or email the approved Notice

attached as Exhibit A-4 to the Opt-In Plaintiffs. Dunn Decl. ¶ 35. The Parties also have agreed

upon a timeline for the various settlement components. Dunn Decl. at ¶ 35. The basic timeline of

events is as follows:

| | |
|---|---|
| Notice is mailed to Putative FLSA Collective Members;<br>Notice is mailed/emailed to Opt-In Plaintiffs | 14 days after the Court enters the Preliminary Approval Order. Ex. A, Settlement Agreement, § X(B)(1). |
| Deadline for the Putative FLSA Collective Members to return the Claim Form<br><br>Deadline for Putative FLSA Collective Members and Opt-In Plaintiffs to object | 60 days from the mailing of the Notices. Ex. A, Settlement Agreement, § X(B)(2); Exs. A-3 & A-4, Notices. |
| Deadline for Opt-In Plaintiffs to opt-out | 30 days from Plaintiffs' Counsel issuing the Notices to Opt-in Plaintiffs. Ex. A-4 |
| Plaintiffs petition the Court for an award of service payments to Named Plaintiffs and reasonable attorneys' fees and costs | 7 days prior to Deadline for Putative Plaintiffs and Opt-ins to return the Claim Form/object |
| Parties jointly file for final approval of settlement | 14 days following the close of the Notice Period. Ex. A, Settlement Agreement, § X(C) |
| Proposed FLSA approval hearing | March 30, 2021 |
| Settlement Effective Date | The "later of: (a) if no motion for extension of time to file a notice of appeal is filed and no appeal is filed, the date thirty-three (33) calendar days after the issuance of the Final Approval Order and Judgment of Dismissal, (b) if a motion for extension of time to file a notice of appeal is filed and/or if an appeal is filed, the date on which a court finally disposes of any appeal that has the effect of affirming the Final Approval Order and Judgment of Dismissal in its entirety, or (c) if a motion for extension of time to file a notice of appeal is filed and no appeal is filed within 30 days thereof, the date |

|  | sixty-three (63) calendar days after the issuance of the Final Approval Order and Judgment of Dismissal." Ex. A, Settlement Agreement, § I(L) |
| Settlement Administrator mails checks to Federal Plaintiffs | 15 days after Kellogg transmits the funds to the Settlement Administrator. Ex. A, Settlement Agreement, § XI(B)(2) |

The Notices provide critical settlement information. They inform recipients of their respective estimated settlement recoveries. Dunn Decl. ¶ 36. The Notices also include information about the Settlement Administrator; the Service Awards; the fact that Plaintiffs' Counsel may petition for an award of attorneys' fees and costs before the close of the opt-in period, but that any award to Plaintiffs' Counsel will not affect any Federal Plaintiff's individual settlement recovery; how Opt-In Plaintiffs and Putative FLSA Collective Members may object to the settlement; how Opt-In Plaintiffs may opt-out; and what claims they will release if they choose to participate.

After Notice is issued, and assuming no more than five Opt-In Plaintiffs opt out and Kellogg does not void the agreement,[7] the Parties will move for approval of the FLSA settlement. After the Court grants final approval, and assuming there are no appeals, the Settlement Administrator will issue settlement checks to the Federal Plaintiffs. Dunn Decl. ¶ 37. Any checks that are uncashed after six months and fifteen days will be deposited with the applicable state department of unclaimed funds. Dunn Decl. ¶ 39. Provided state law permits, this will allow the Federal Plaintiffs the opportunity to claim their money at a later time. Dunn Decl. ¶ 39.

## III.   LEGAL STANDARD

Congress designed the FLSA to protect workers from "substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)). Thus, to protect workers, a FLSA claim typically can be waived only when: (1) the Secretary of Labor

---

[7] Under the Settlement Agreement, Kellogg can choose to void the Agreement within seven calendar days if more than five existing Opt-In Plaintiffs opt out. Dunn Dec. ¶ 38.

supervises the back wage payments; or (2) the court approves the proposed settlement between the employer and employees. 29 U.S.C. § 215(b); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982).[8]

### A.   Notice to Putative Class

The district court has the discretion to facilitate notice to potential plaintiffs of their right to opt-into the action. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). Here, the Parties stipulate to notice for the purpose of settlement, which would allow FLSA Collective members the opportunity to learn about the case and to participate in the settlement.

### B.   Notice to Opt-ins

Before courts approve FLSA settlements, particularly in collective actions, they may first authorize notice of the settlement. Notice of the settlement and its terms protects opt-ins' due process rights because it gives opt-ins the right to object before they are bound to the settlement terms. In FLSA actions like this one, including in *Thomas*, Courts across the country have issued notice before settlement approval. *Thomas v. Kellogg Co.*, 3:13 Civ. 05136-RBL, Doc. 535 (W.D. Wash. March 28, 2018); *Hodge v. Signia Mktg., Ltd.*, 15 Civ. 02839-KMT, 2017 WL 5900344, at *2 (D. Colo. Nov. 30, 2017) (counsel notified plaintiffs of settlement and there were no objections, but some notices were undeliverable); *Brueningsen v. Resort Express Inc.*, 2:12 Civ. 843-DN, 2016 WL 10537003, at *1 (D. Utah May 23, 2016) (preliminary approval on behalf of FLSA class who was given right to object); *Goldsby v. Renosol Seating, LLC*, 2:08-0148-KD-N, 2013 WL 6535253, at *10 (S.D. Ala. Dec. 13, 2013) (adopting two-step process to permit opt-ins to object); *Hosier v. Mattress Firm, Inc.*, 3:10 Civ. 294-J-32JRK, 2011 WL 7071062, at *3 (M.D. Fla. Dec. 29, 2011), *report and recommendation adopted*, 3:10 Civ. 294-J-32JRK, 2012 WL 177533 (M.D. Fla. Jan. 23, 2012) (same); *In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, 06 Civ. 17430-WYD-CBS, 2010 WL 9593848, at *1 (D. Colo. Oct. 6, 2010) (same). Indeed, if the Opt-In Plaintiffs here were denied the opportunity to object, the Court could reject the settlement. *Tommey v. Computer Scis. Corp.*, 11 Civ. 02214-EFM, 2015 WL 1623025, at *1 (D. Kan. Apr. 13, 2015) (refusing to approve

---

[8] The Fifth Circuit and some district courts have found that under certain circumstances, private FLSA settlements can bind parties even without court or Department of Labor approval. *See Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) *cert. denied,* 568 U.S. 1069 (2012).

FLSA settlement until opt-ins are notified of settlement and given right to object). Thus, the Parties' two proposed Notices permit Putative FLSA Collective Members the option not to participate, permits Federal Plaintiffs to object, and offers an additional layer of protection by allowing Opt-In Plaintiffs to opt out.

### 1.  Notice Form

Here, the Parties agreed that the settlement administrator will issue the Notice to the FLSA Collective members, while Plaintiffs' Counsel will issue notice to the existing Opt-In Plaintiffs. The Notices are similar to the one approved in *Thomas* and are derived from the Federal Judicial Center class action notice.[9] The Notices inform Opt-In Plaintiffs and FLSA Collective members of the settlement agreement, its essential terms, and their respective rights.

### 2.  Service Awards

The Notice informs Opt-In Plaintiffs and FLSA Collective members that the settlement provides for service awards to the three Named Plaintiffs (up to $7,500 each). "Numerous courts have authorized incentive awards. These courts have stressed that incentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (collecting cases). Service awards "are fairly typical in class action cases [and] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (service awards appropriate in FLSA collective actions for same reasons they apply in Rule 23 class actions). The service awards proposed here are consistent with the amounts approved by other courts in this Circuit. *See, e.g.*, *McFarlin v. Word Enters., LLC*, No. 16-cv-12536, 2020 WL 2745300, at *2 (E.D. Mich. May 27, 2020) (approving service awards of $10,000 and $5,000 to class representatives); *Daoust, v. Maru Rest., LLC*, No. 17-cv-13879, 2019 WL 2866490, at *5-6 (E.D.

---

[9] https://www.fjc.gov/sites/default/files/2016/ClaAct11.pdf.

Mich. July 3, 2019) (awarding $5,000 to the named plaintiff to "recognize[] the risks" she faced "and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in the mediation") (collecting cases); *Barnes v. Winking Lizard, Inc.*, No. 18-cv-952, 2019 WL 1614822, at *6 (N.D. Ohio Mar. 26, 2019) (approving the "modest class representative award" of $7500). The Notice explains that the service awards are for the Named Plaintiffs' risks, their representation of the other Plaintiffs, and for their time and efforts on behalf of the hundreds of KSRs who will recover unpaid overtime wages. As part of the Parties' future motion for final approval of this FLSA settlement, Plaintiffs will ask the Court to approve service payments.

### 3. Attorneys' Fees and Costs

Under the FLSA, Plaintiffs are entitled to recover attorneys' fees and costs. Because the FLSA is a remedial statute designed to protect workers and guarantee that minimum labor standards are applicable across the economy, fair compensation for attorneys who take on such litigation furthers the FLSA's purpose. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work"). "The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate, Tile & Composition Roofers, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)). "An award of attorney fees to a prevailing plaintiff under § 16(b) of the FLSA is mandatory[.]" *Fegley*, 19 F.3d at 1134 (citing *G&M Roofing*, 732 F.2d at 501); *see also Alyeska Pipeline v. Wilderness Soc'y*, 421 U.S. 240, 261 & n.34 (1975) ("Other statutes which are mandatory in terms of awarding attorneys' fees include the Fair Labor Standards Act, 29 U.S.C. § 216(b)[.]").

The Notice does not mention the amount of attorney's fees or costs Plaintiffs will request because any award of attorney's fees and costs in this matter will have no effect on the Plaintiffs' cumulative or individual recovery. Further, depending on the fee award Plaintiffs' Counsel receive

in arbitration, Plaintiffs' Counsel may choose not to apply for fees and costs in this case. The settlement agreement expressly excludes attorney's fees and costs from the settlement amount, and instead contemplates that Plaintiffs will petition separately for attorney's fees and costs pursuant to § 216(b). In other words, the entire amount of the $1,851,689.56 settlement will be allocated to KSRs, and none will be taken by Plaintiffs' Counsel. Instead, Plaintiffs will ask the Court to award Plaintiffs' Counsel reasonable fees and costs from Kellogg directly, if at all.

### C. Preliminary Approval of the FLSA Settlement

Most courts, including those in the Sixth Circuit, evaluate FLSA settlements under the standard set forth in the Eleventh Circuit's *Lynn's Food Stores, Inc.*, 679 F.2d at 1350, that the settlement must be "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Alimar Sec., Inc*, 2016 WL 6405798, at *3; *see also Brown v. AK Lawncare, Inc.*, No. 14-cv-14158, 2017 WL 1950988, at *2 (E.D. Mich. May 11, 2017); *Williams v. K&K Assisted Living LLC*, No. 15-cv-11565, 2016 WL 319596, at *1 (E.D. Mich. Jan. 27, 2016); *Snook*, 2015 WL 144400, at *1. FLSA settlements like this one, reached "in the context of litigation, where '[t]he employees are likely to be represented by an attorney who can protect their rights under the statute,' . . . are 'more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Brown*, 2017 WL 1950988, at *2.

### 1. A Bona Fide Dispute Exists Between the Parties

"The primary focus of the bona fide dispute inquiry is to ensure that there is a legitimate question as to liability under the FLSA, and that the employer is not simply taking advantage of the employee." *Welch v. Big Boy Rests. Int'l, LLC*, No. 18-cv-11222, 2018 WL 4745502, at *3 (E.D. Mich. Oct. 2, 2018) (citing *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008)). "Although the presence of adversarial litigation tends to suggest the presence of a bona fide dispute, 'lawsuit' and 'dispute' are not synonymous and treating them as such would render the bona fide dispute requirement a nullity." *Id.*

Here, there is no question that bona fide disputes exist between the parties. These disputes range from whether KSRs worked more than 40 hours in a week or are exempt from the overtime

provision of the FLSA, to the correct measure of damages, which hinges on the bona fide disputes regarding Kellogg's alleged willfulness, whether any equitable tolling may apply, and whether Kellogg acted in good faith in classifying KSRs as exempt from the FLSA's overtime provisions. The issues were actively litigated for four years up to the eve of trial in the *Thomas* matter, over the course of more than three years in this case, and in the parallel individual arbitrations. Given the sheer number of substantive disputes between the Parties in this litigation, this settlement meets the standard of having resolved a bona fide FLSA dispute between the parties.

## 2.   The Proposed Settlement Is Fair and Reasonable

Courts consider several factors in assessing whether a settlement meets the fair and reasonable standard, including:

> (1) the plaintiff[s'] range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Williams v. Alimar Sec., Inc.*, 13 Civ. 12732, 2016 WL 6405798, at *3 (E.D. Mich. Oct. 31, 2016); *Brown*, 2017 WL 1950988, at *2. "A district court may choose to consider only factors that are relevant to the settlement at hand." *Snook*, 2015 WL 144400, at *1. And although the Court does not need to consider these factors now, they do establish this settlement as fair.

### a.   Plaintiffs' Range of Possible Recovery is Wide and the Risks of Litigation are Serious

The Parties address these two factors together because they are interrelated. The Plaintiffs' range of recovery in this matter is wide, and it varies drastically depending on how the risks of litigation play out. For many Plaintiffs, including nearly all FLSA Collective members, the recovery could very well have been $0 but for the settlement. If Kellogg were to succeed on its exemption defense, for example, all Federal Plaintiffs would recover nothing. Or, because the class period at issue in this case ends in August 2017, if the Plaintiffs could not successfully secure

equitable tolling for those FLSA Collective members, their claims would have expired as of August 2020, even assuming Plaintiffs could prove Kellogg acted willfully. And even if Plaintiffs successfully secured equitable tolling of the limitations period, Plaintiffs would also have to argue that notice should be sent to the entire FLSA Collective, including those KSRs whom Kellogg claims are subject to valid arbitration agreements (approximately 855 out of the approximately 1,700 total class members). Otherwise, those 855 KSRs would never receive notice of the action and their right to participate or challenge the validity of any arbitration agreement, without which those KSRs would never recover any unpaid overtime wages from Kellogg.

Although Plaintiffs remain confident in their case, if Kellogg were to succeed on its exemption defense, Plaintiffs would not be entitled to any overtime wages, and the recovery for all Plaintiffs would be $0. Alternatively, the maximum recovery available to Plaintiffs would only be possible if:

(1) the court were to certify this collective action and grant the issuance of notice to all putative class members, and

(2) the court allowed equitable tolling of the limitations period back to the date Plaintiffs first filed their motion for conditional certification, and

(3) all putative class members opted into the action, and

(4) none had enforceable arbitration agreements, and

(5) Plaintiffs proved they were entitled to unpaid overtime wages, and

(6) Plaintiffs proved on a representative basis that they worked all of the hours they allege at trial, and

(7) Kellogg failed to prove it acted in good faith, and

(8) Plaintiffs proved Kellogg willfully violated the FLSA, and

(9) The Court applied Plaintiffs' method for calculating damages.

That total recovery would be reduced—in some cases, substantially reduced—if Plaintiffs were not successful in all the above motions or arguments. For example, each Plaintiff's recovery would be slashed if Kellogg prevailed on its argument regarding the proper method to calculate

damages. Or if Plaintiffs failed to prove Kellogg acted willfully, Plaintiffs' recovery would be significantly reduced, and some KSRs would recover nothing. If Kellogg further proved it acted in good faith, recovery for what claims remained would be further reduced by half.

In short, Plaintiffs faced numerous risks in this litigation, each with serious consequences to the total recovery, and many risks resulting in no recovery at all for some, many, or all Plaintiffs. As such, these factors weigh in favor of approval.

### b. The Parties Avoid Massive Burdens and Expenses with This Settlement

Although the Parties have been litigating this matter for over three years, and although several individual arbitrations went to a hearing on the merits, this case remains early in the litigation, with Plaintiffs' motion for conditional certification of the collective action still pending. As such, the Parties anticipate extensive litigation would continue were this settlement unsuccessful. Each of the potential risks listed in the above section is an issue that the Parties anticipated having to litigate through briefing and argument, many of which would require discovery. The complexity of the issues and risks, coupled with the experience and capabilities of counsel for both Parties, mean this matter would be hard-fought and each issue would be thoroughly litigated. Because the Parties have not yet engaged in merits discovery—although merits discovery had been plentiful in the *Thomas* case and in the parallel individual arbitration matters—settlement at this stage avoids significant costs and burdens on both Parties, both in terms of evidence retention, and in discovery production and review. Moreover, by settling this matter, many Opt-In Plaintiffs avoid the burden and expense of participating in discovery, including sitting for depositions and producing documents, and Kellogg avoids the burden and expense of its officers and representatives sitting for additional depositions, on top of those already taken by the Arbitration Claimants. Moreover, the settlement allows the Parties and the Court to avoid

expending resources on trial in this matter, including the expense and time involved. Accordingly, this factor weighs in favor of approval.

### c. The Settlement is the Product of Arms-Length Bargaining, Negating the Possibility of Fraud or Collusion

This settlement is the product of extensive arms-length negotiations, much of which occurred through and with a seasoned and respected mediator well-versed in the FLSA, Judge Rosen, including two all-day, in-person mediations. "The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) (citing *Hemphill v. San Diego Ass'n of Realtors*, 225 F.R.D. 616, 621 (S.D. Cal. 2005); *In re Toys R Us Antitrust Lit.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000)); *see also Westley v. CCK Pizza Co.*, 18 Civ. 13627, 2019 WL 5653403, at *3 (E.D. Mich. Oct. 31, 2019). Like in *Thomas*, Counsel for both Parties can confirm that the negotiations were hard fought. *See Hainey*, 617 F. Supp. 2d at 673. Accordingly, these factors weigh in favor of approval.

## IV. CONCLUSION

Thus, the Parties respectfully request that the Court:

1. Preliminarily approve the Parties' settlement as fair and reasonable resolution of a bona fide dispute over FLSA provisions;

2. Approve the form of the proposed Putative FLSA Collective Members' Notice in Exhibit A-3;

3. Authorize the Settlement Administrator to issue the Notice in Exhibit A-3 to the Putative FLSA Collective Members who are not currently participating the in the case and have not pursued their claims in individual arbitration;

4. Approve the form of the proposed Opt-In Plaintiffs' Notice in Exhibit A-4;

5. Authorize Plaintiffs' Counsel to issue the Notice in Exhibit A-4 to the Opt-In Plaintiffs;

6. Approve Analytics, LLC as the Settlement Administrator; and

7. Set a final hearing date for final approval of the settlement, including an award of reasonable attorneys' fees and costs should Plaintiffs' Counsel file a timely petition for same.

Respectfully Submitted,

Dated: November 25, 2020

*s/ Meagan M. Rafferty*
Matt Dunn
Lesley Tse
Meagan M. Rafferty
**GETMAN, SWEENEY & DUNN, PLLC**
260 Fair Street
Kingston, NY 12401
phone: (845) 255-9370 / fax: (845) 255-8649
email: mdunn@getmansweeney.com

*Attorneys for Plaintiffs*

Dated: November 25, 2020

*s/ James N. Boudreau*
James N. Boudreau
Christiana Signs
**GREENBERG TRAURIG, LLP**
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 988-7833
Fax: (215) 988-7801
Email: boudreauj@gtlaw.com

*Attorneys for Defendants*