## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **ROSEANN MIRACOLA, SCOTTY POARCH, and MARK YOUNG, on behalf of themselves and those similarly situated persons,** | **1:18-cv-01341-PLM-RSK** |
| **Plaintiffs,** | **District Judge Paul L. Maloney** |
| **v.** | **Magistrate Judge Ray Kent** |
| **KELLOGG COMPANY and KELLOGG SALES COMPANY,** | |
| **Defendants.** | |

## JOINT MOTION FOR FINAL APPROVAL OF
## FAIR LABOR STANDARDS ACT SETTLEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   FACTS ..................................................................................................................... 3

    A.    Brief Factual and Procedural History .......................................................... 3

    B.    Settlement Participation and Objections ...................................................... 4

    C.    Settlement Allocations ................................................................................. 7

III.  FINAL APPROVAL OF THE FLSA SETTLEMENT ........................................... 8

    A.    Legal Standard ............................................................................................. 8

    B.    The Settlement Resolves a Bona Fide Dispute ............................................ 9

    C.    The Settlement is Fair and Reasonable ...................................................... 10

        1.    Plaintiffs' Range of Possible Recovery is Wide, and the Risks of Litigation are Serious ....................................................................... 11

        2.    The Parties Avoid Massive Burdens and Expenses with This Settlement ............ 13

        3.    The Settlement is the Product of Arms-Length Bargaining, Negating the Possibility of Fraud or Collusion ................................. 13

    D.    The Settlement's Release Provisions are Proper ........................................ 14

    E.    The Service Awards to the Named Plaintiffs are Fair, Reasonable, and Consistent with the FLSA ................................................................... 15

IV.   CONCLUSION ..................................................................................................... 188

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barnes v. Winking Lizard, Inc.*,
  18 Civ. 952, 2019 WL 1614822 (N.D. Ohio Mar. 26, 2019) .................................................16

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
  450 U.S. 728 (1981) ...........................................................................................................................8

*Brown v. AK Lawncare, Inc.*,
  14 Civ. 14158, 2017 WL 1950988 (E.D. Mich. May 11, 2017)...........................................10

*Collins v. Sanderson Farms, Inc.*,
  568 F. Supp. 2d 714 (E.D. La. 2008) ........................................................................................9

*Daoust, v. Maru Rest., LLC*,
  17 Civ. 13879, 2019 WL 2866490 (E.D. Mich. July 3, 2019) .............................................16

*Espenscheid v. DirectSat USA, LLC*,
  688 F.3d 872 (7th Cir. 2012) .....................................................................................................15

*Hadix v. Johnson*,
  322 F.3d 895 (6th Cir. 2003) .....................................................................................................15

*Hainey v. Parrot*,
  617 F. Supp. 2d 668 (S.D. Ohio 2007) ...................................................................................14

*Hemphill v. San Diego Ass'n of Realtors*,
  225 F.R.D. 616 (S.D. Cal. 2005) ..............................................................................................14

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982): (1).............................................................................................1

*McFarlin v. Word Enters., LLC*,
  16 Civ. 12536, 2020 WL 2745300 (E.D. Mich. May 27, 2020)...........................................16

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .....................................................................................................15

*In re Toys R Us Antitrust Lit.*,
  191 F.R.D. 347 (E.D.N.Y. 2000) ..............................................................................................14

*Welch v. Big Boy Rests. Int'l, LLC*,
  18 Civ. 11222, 2018 WL 4745502 (E.D. Mich. Oct. 2, 2018) ...............................................9

*Westley v. CCK Pizza Co.*,
    18 Civ. 13627, 2019 WL 5653403 (E.D. Mich. Oct. 31, 2019) ...............................................14

*Williams v. Alimar Sec., Inc.*,
    13 Civ. 12732, 2016 WL 6405798 (E.D. Mich. Oct. 31, 2016) ..............................................10

**Statutes**

29 U.S.C. § 202(a) ....................................................................................................................8

29 U.S.C. § 215(b) ....................................................................................................................9

**Rules**

Rule 23 ...................................................................................................................................15

## I.    INTRODUCTION

The Parties request that the Court approve this Fair Labor Standards Act collective action settlement. Because this is not a supervised U.S. Department of Labor settlement, the Parties ask the Court to review and approve this settlement to effectuate it. As the Court noted in its Order Granting Joint Motion for Preliminary Approval of FLSA Settlement (ECF No. 294, PageID 2555) (hereinafter, "Prelim. Order"), most courts evaluate FLSA settlements under the standard set forth in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982): (1) the FLSA settlement must involve the resolution of a bona fide dispute over an FLSA provision, and (2) the settlement must be fair and reasonable. "When a court finds that the proposed settlement reflects a reasonable compromise over contested issues, it should be approved.'" Prelim. Order (ECF No. 294, PageID 2556) (quoting *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)). At the preliminary approval stage, the Court found both factors weigh in favor of settlement approval. *Id.* at PageID 2559 ("The proposed settlement is fair and reasonable in light of the factual and legal disputes that remain."). Given the positive response from the Named, Opt-in, and FLSA Collective members, nothing should change that finding here at the final approval stage.

The Court preliminarily approved the Parties' settlement terms by Order issued March 1, 2021 (ECF No. 294, PageID 2560), and authorized the issuance of Notice to each the Opt-In Plaintiffs and the putative collective members (ECF No. 295, PageID 2561-62). The Notice to Opt-In Plaintiffs (ECF No. 291-5, PageID 2531-35) informed them of the terms of the settlement, their legal rights, and their options, including to participate in the settlement by doing nothing, to object to the settlement, or opt-out of the settlement. The Notice to putative collective members (ECF No. 291-4, PageID 2523-28) informed them of the settlement terms, their legal rights, and their options, including to participate in the settlement by filing a claim form, to object to the

1

settlement by filing a Claim Form and submitting an objection in writing, or to do nothing and not participate in the settlement. The Notice to FLSA Collective Members explained only those individuals participating in the Settlement were permitted to object to the Settlement. *See* ECF No. 291-4, PageID 2523 ("If you object to the settlement, you will be bound by the Court's decision, and if the Court grants final approval of the settlement, you will receive a check in the mail and release your wage and hour claims.").

On March 15, 2021, the Court-approved Settlement Administrator distributed the Notice to all FLSA Collective Action Members and Plaintiffs' Counsel distributed the Notice to all Named and Opt-In Plaintiffs. Per the Notice, the Opt-In Plaintiffs had 30 days to opt out by sending notice of their desire to opt out to the Settlement Administrator. ECF No. 295, PageID 2562, ¶ vi. In that time, not one Opt-In Plaintiff opted out of the settlement. FLSA Collective Members had 60 days to opt into the settlement by returning a Claim Form to the Settlement Administrator. ECF No. 295, PageID 2561, ¶ iii. In that time, 494 FLSA Collective Members returned Claim Forms to opt into the settlement. The list of class members who returned a Claim Form is attached as Exhibit 2. Any objection to the Settlement, whether by Opt-In Plaintiff or FLSA Collective Member, was to be received within 60 days. ECF No. 295, Page ID 2562, ¶ vii. Within that time, of the 494 FLSA Collective Members who submitted Claim Forms, two submitted valid objections. Those objections are attached as Exhibit B to the Declaration of Jodi Berbrich, and are addressed further below. One other objection was received within the 60-day period, but that individual did not submit a Claim Form, making the objection invalid.

To bring this case to a close, the Parties ask the Court to grant this motion and approve the settlement, including service payments to the Named Plaintiffs. Plaintiffs' Counsel have separately filed a motion for attorneys' fees and costs (ECF No. 298, PageID 2567), which Defendants have

2

opposed. Upon final approval of the settlement, including the Court's resolution of Plaintiffs' Counsel's motion for attorneys' fees and costs, and assuming there are no appeals, settlement checks will be mailed to the Federal Plaintiffs, and the Federal Plaintiffs will release their wage and hour claims.

## II.    FACTS

### A.    Brief Factual and Procedural History

The Parties briefly summarize the case, as the motion for preliminary approval thoroughly detailed the facts and procedural history. *See* ECF No. 291.

Plaintiff Brian Smith initiated this FLSA lawsuit in the District of Nevada in July 2017, individually and on behalf of other Kellogg Sales Representatives and other Kellogg employees in similar positions ("KSRs"). The suit alleges that KSRs were not properly compensated for time worked over 40 hours in a workweek, in violation of the FLSA. Smith, himself, was compelled to individual arbitration and resolved his claims there, so he and Plaintiffs moved to amend the complaint to name three other Representative Plaintiffs to represent the FLSA Collective. (ECF No. 183). The Court granted that motion and the motion to transfer the action to this district in December 2018. ECF. No. 206.

As the Court noted, "[o]ver the last three years, the parties have engaged in discovery, motions practice, and two mediations." Prelim. Order (ECF. No. 294, PageID 2554). And even beyond what is readily apparent from the docket, this litigation grew out from many years of related prior litigation. *Thomas v. Kellogg Co.*, 3:13 Civ. 5136 (W.D. Wash); Prelim. Order (ECF No. 294, PageID 2559). The *Thomas* case was initiated in 2013 and settled in late 2017 on the eve of trial, and although this action involves allegations and claims like those raised in *Thomas*, Smith's claims and those of the putative Collective Members were not covered by the *Thomas* suit. *Id.* In addition, as this action progressed, approximately 40 "parallel individual arbitrations"

3

stemming from this action, including that of the original Named Plaintiff, Brian Smith, proceeded in JAMS. *See id.* at PageID 2554. Four of those individual arbitrations progressed through hearing/trial, and several others settled immediately before their scheduled hearing.

Cumulatively, the litigation history of this and other similar and related actions, both predating this action and proceeding parallel to it, put the parties in a strong position to understand the strengths and weaknesses of the claims and defenses. After two unsuccessful mediations with Hon. Gerald Rosen, United States District Judge for the Western District of Michigan (Ret.), first in May 2019 and again in February 2020, the parties were able to reach a global settlement in principle in late June 2020. Thereafter, the parties continued to negotiate to reach a finalized Term Sheet, which included all material terms to the global settlement. That Term Sheet was then translated into final Settlement Agreements, including that which governs this Settlement, which the Parties and their Counsel signed on November 25, 2020. ECF No. 291-1.

### B.    Settlement Participation and Objections

Following the Court's preliminary approval of the Settlement, on March 15, 2021, Plaintiffs' Counsel mailed and emailed the approved Notice to the 77 Named and Opt-in plaintiffs. *See* Notice (ECF No. 291-5). The Opt-In Plaintiffs could opt out of or object to the Settlement, but none did. Accordingly, all 77 Named and Opt-In Plaintiffs are participating in the Settlement, without objection. They will recover an average of approximately $14,300.

Also, the Settlement Administrator mailed the approved Notice to the 1,719 FLSA Collective Members. *See* Notice (ECF No. 291-4); Berbrich Dec. ¶ 5. The Notice distributed to the FLSA Collective Members informed them of their right to participate in the Settlement by submitting a Claim Form. Of the 1,719 FLSA Collective Members who were sent Notice, 494 returned Claim Forms. Effectively, more than 28% of the Putative Collective is participating in the Settlement, which is a significant participation rate for cases such as this. In Counsel's

experience, typically 25%-33% of the putative class members participate in a FLSA collective action. Importantly, only those who wanted to participate did so. Those who did not want to participate, and preserve their claims, had the option not to return a claim form.

Participating FLSA Collective Members could object to the Settlement by submitting a written objection. The Parties received only two valid written objections. Exhibit B to the Declaration of Jodi Berbrich. These valid objections account for approximately 0.4% of the FLSA Collective Members. The overall lack of objections confirms that Plaintiffs overwhelmingly approve of the settlement. *Arp v. Hohla & Wyss Enterprises, LLC*, 3:18 Civ. 119, 2020 WL 6498956, at *5 (S.D. Ohio Nov. 5, 2020) ("The lack of objections/exclusions supports approval.")

Neither of the objections warrant denying the settlement or changing its terms. The first objection, signed by Jeffrey M. Sitarek, does not identify the nature of his objection other than to "ask the court to consider a fair and equitable settlement for all wages and hours never compensated." Sitarek letter, Ex. B. The letter details Mr. Sitarek's employment history with Kellogg, job duties during that time, and hours worked without overtime compensation. *Id.* He points out his long history with Kellogg—24.5 years. The FLSA, however, does not permit employees to seek claims back dating back 28 years. Given his tenure with Kellogg, he had the opportunity to participate in the *Thomas* case but did not. He also signed an arbitration agreement, which may have precluded him from participating in this case had the parties continued to litigate. And he had the opportunity to file his claims in arbitration, but he did not. Mr. Sitarek asks to attend the Fairness Hearing virtually, if possible, to heard by the Court. *Id.* ("I would ask that I be able to communicate with the court virtual [sic] if possible, on June, 14 2021 [sic].").

The second objection the Parties received from a participating FLSA Collective Member is signed by Kawanna Gurley. Ex. B. Ms. Gurley's objection is predicated on a desire to recover

for overtime hours worked between 2014 and 2016. *See id.* ("I would like to file additional claims due to the fact that I was employed by Kelloggs [sic] as a Sales manager from 2014–2016 & worked over 40 hrs daily [sic], & wasn't compensated."). Without any tolling, her claim falls outside the any possible applicable limitations period. In addition to wages, Ms. Gurley also indicates a desire to recover for "wear & tear physically & mentally." *Id.* But such damages are not recoverable under the FLSA, and thus were neither sought by Plaintiffs in this action nor contemplated by this Settlement. *See* 29 U.S.C. § 216(b). Ms. Gurley does not request to be heard at the Fairness Hearing. *Id.* ("I don't have any intentions on [sic] appearing at the fairness hearing.").[1]

The Parties received one additional letter objecting to the Settlement. It was submitted by Devereaux Brewer, an individual who did not submit a Claim Form, and thus is not participating in the Settlement. *See* Ex. B. This letter is not a proper objection; objections may be submitted only by Settlement participants, as detailed in the Notice. *See* Notice to Collective (ECF No. 291-4, PageID 2525) ("To Object To The Settlement: If you file a claim form to participate in the settlement, you may object to the settlement terms if you believe they are unfair."); Berbrich Dec. ¶ 7. Although Brewer would "like to thank all those involved" for taking "the time, energy, and expense to bring this lawsuit about," Brewer wants "to seek . . . PUNITIVE DAMAGES, to punish these condescending business people that they can do [sic] their circumventing dance around laws and get away with it." Ex. B. The Court should not consider this letter from a non-participant— and thus a disinterested party—to the Settlement. But even if the Court were to consider the letter, the primary relief Brewer seeks—punitive damages—is not available under the FLSA. 29 U.S.C.

---

[1] Ms. Gurley is also subject to an arbitration agreement.

§ 216(b). As a non-participant in the Settlement, Brewer likely will not attend the Fairness Hearing, but the letter makes no indication either way.

###    C.    Settlement Allocations

The $1,851,689.56 settlement agreement provides the Named and Opt-in Plaintiffs with a significant recovery. Overall, they will recover an average of more than $14,300 (Fund A). Each of their individual recoveries is based on when they filed a consent to sue form, their pay, and the number of weeks they worked as a KSR within the relevant period. None of the Named or Opt-In Plaintiffs opted out of the Settlement, so all of Fund A will be distributed to those Plaintiffs pending final approval of the Settlement and any appeal.

Participating FLSA Collective Members—meaning those who timely filed a Claim Form—will recover from Fund B. Assuming the Court approves the Named Plaintiffs' service payments and the Settlement Administrator, the 494 participating FLSA Collective Members will share $688,738.81. Those who worked a KSR-WH position only will recover a total payment of $50. All other participating Collective members will receive a base payment of $100 each. Those participating KSRs[2] who worked between January 16, 2016 and August 18, 2017 will recover a share for each week they worked. And any participating KSR who previously filed and withdrew a consent to sue form will receive an additional share amount for each week worked between January 16, 2016 and August 18, 2017.

Because there is no reversion from Fund B to Kellogg, the shares of non-participating KSRs will be allocated on a pro-rata basis to those participating KSRs who worked between January 16, 2016 and August 18, 2017. In other words, the formula described above, also described in the parties' motion for preliminary settlement approval (ECF No. 291, PageID.2444), remains

---

[2] Except for KSRs who worked in a KSR-WH only position.

unchanged. Because fewer than 100% of FLSA Collective Members filed a Claim Form, each participating Collective Member who worked between January 16, 2016 and August 18, 2017 will receive a recovery over three times the amount than that which was communicated to them in the Notice. This recovery is significant considering the risk that their claims may have lost all value due to the expiration of the statute of limitations, and will be even more significant now that each participant's recovery has grown.

After the Court grants final approval, and assuming there are no appeals, the Settlement Administrator will issue settlement checks to the Federal Plaintiffs. ECF No. 292, PageID.2548 ¶ 37. Any checks that are uncashed after six months and fifteen days will be deposited with the applicable state department of unclaimed funds. ECF No. 292, PageID.2549 ¶ 39. Provided state law permits, this will allow the Federal Plaintiffs the opportunity to claim their money later. *Id.*

The Settlement Agreement provides for service awards to the three Named Plaintiffs of up to $7,500 each. The Court found these service award payments to be "fair, reasonable, and consistent with the FLSA." Prelim. Order (ECF No. 294, PageID 2558). As part of receiving the service payment, the Named Plaintiffs will provide Kellogg with a general release of claims. The Notice informed Opt-In Plaintiffs and FLSA Collective members about this allocation. No one, including the two valid objectors, raised any complaint regarding the service awards, nor did the objection submitted by the non-participant mention the service awards.

## III.    FINAL APPROVAL OF THE FLSA SETTLEMENT

### A.  Legal Standard

Congress designed the FLSA to protect workers from "substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)). Thus,

8

many courts hold a FLSA claim can be waived only when: (1) the Secretary of Labor supervises the back wage payments; or (2) the court approves the proposed settlement between the employer and employees. 29 U.S.C. § 215(b); Prelim. Order (ECF No. 294, PageID 2555-56) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)) (collecting cases within Sixth Circuit following standard set forth in *Lynn Food Stores*).

As this Court acknowledged, a court must "scrutinize the settlement for fairness" before approving a proposed settlement of a collective action under the FLSA. Prelim. Order. (ECF No. 294, PageID 2556) (quoting *Lynn's Food Stores*, 679 F.2d at 1353). "When a court finds that 'the proposed settlement reflects a reasonable compromise over contested issues, it should be approved.'" *Id.* (quoting *Beckman*, 293 F.R.D. at 476). Many courts, including this Court, divide the analysis into two prongs: (1) whether the Settlement resolves a bona fide dispute under the FLSA; and (2) whether the Settlement is fair and reasonable. *Id.* at PageID 2556-57; *see also Alimar Sec., Inc*, 2016 WL 6405798, at *3; *see also Brown v. AK Lawncare, Inc.*, 14 Civ. 14158, 2017 WL 1950988, at *2 (E.D. Mich. May 11, 2017).

**B.  The Settlement Resolves a Bona Fide Dispute**

"The primary focus of the bona fide dispute inquiry is to ensure that there is a legitimate question as to liability under the FLSA, and that the employer is not simply taking advantage of the employee." *Welch v. Big Boy Rests. Int'l, LLC*, 18 Civ. 11222, 2018 WL 4745502, at *3 (E.D. Mich. Oct. 2, 2018) (citing *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008)). "Although the presence of adversarial litigation tends to suggest the presence of a bona fide dispute, 'lawsuit' and 'dispute' are not synonymous and treating them as such would render the bona fide dispute requirement a nullity." *Id.*

Here, there is no question that bona fide disputes exist between the parties. These disputes range from whether KSRs are exempt from the overtime provision of the FLSA to the correct measure of damages, which hinge on bona fide disputes regarding Kellogg's alleged willfulness, whether equitable tolling may apply, and whether Kellogg acted in good faith in classifying KSRs as exempt from the FLSA's overtime provisions. The issues were actively litigated for more than three years in this case and in the parallel individual arbitrations.

At the preliminary approval stage, the Court found all of these factors weigh in favor of finding a bona fide dispute exists here. ECF No. 294, PageID 2557. The same factors and disputes exist now. Given the sheer number of substantive disputes between the Parties in this litigation, this settlement meets the standard of having resolved a bona fide FLSA dispute between the parties.

### C.  The Settlement is Fair and Reasonable

Courts, including this Court at the preliminary approval stage (ECF No. 294, PageID 2557), consider several factors in assessing whether a settlement meets the fair and reasonable standard, including: (1) the plaintiffs' range of possible recovery, (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses, (3) the seriousness of the litigation risks faced by the parties, (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel, and (5) the possibility of fraud or collusion. Prelim. Order (ECF No. 294, PageID 2557) (citing *LaFleur v. Dollar Tree Stores, Inc.*, 198 F. Supp. 3d, 588, 593 (E.D. Va. 2016); *Silva v. Miller*, 547 F. Supp. 2d 1299, 1303-04 (S.D. Fla. 2008); *Williams v. Alimar Sec., Inc.*, 13 Civ. 12732, 2016 WL 6405798, at *3 (E.D. Mich. Oct. 31, 2016)); *see also Brown*, 2017 WL 1950988, at *2. "A district court may choose to consider only factors that are relevant to the settlement at hand." *Snook*, 2015 WL 144400, at *1. The Court concluded at the preliminary approval stage that these factors weigh

10

in favor of finding the Settlement to be fair and reasonable. Prelim. Order (ECF No. 294, PageID 2557). Now at the final approval stage, these factors still establish this settlement as fair and reasonable.

### 1. Plaintiffs' Range of Possible Recovery is Wide, and the Risks of Litigation are Serious

The Parties address these two factors together because they are interrelated. The Plaintiffs' range of recovery in this matter is wide, and it varies drastically depending on how the risks of litigation play out. For many Plaintiffs, including nearly all FLSA Collective members, the recovery could very well have been $0 but for the settlement. If Kellogg were to succeed on its exemption defense, for example, all Federal Plaintiffs would recover nothing. Or, because the class period at issue in this case ends in August 2017, if the Plaintiffs could not successfully secure equitable tolling for those FLSA Collective members, their claims would have expired as of August 2020, even assuming Plaintiffs could prove Kellogg acted willfully. And even if Plaintiffs successfully secured equitable tolling of the limitations period, Plaintiffs also would have to argue successfully for notice to be distributed to the entire FLSA Collective, including those KSRs whom Kellogg contends are subject to valid arbitration agreements (approximately 855 of the approximately 1,700 total class members). If Plaintiffs were unsuccessful in that argument, those 855 KSRs would never receive notice of this action and their FLSA rights, without which those KSRs likely would never recover any unpaid overtime wages from Kellogg.

The maximum recovery available to Plaintiffs would only be possible if:

(1)    the court were to certify this collective action and grant the issuance of notice to <u>all</u> putative class members, and

(2)    the court allowed equitable tolling of the limitations period back to the date Plaintiffs first filed their motion for conditional certification, and

(3)    all putative class members opted into the action, and

(4)    none had enforceable arbitration agreements, and

(5)    Plaintiffs proved they were entitled to unpaid overtime wages, and

(6)    Plaintiffs proved that they worked all hours they allege at trial, and

(7)    Kellogg failed to prove it acted in good faith, and

(8)    Plaintiffs proved Kellogg willfully violated the FLSA, and

(9)    The Court applied Plaintiffs' method for calculating damages.

That total recovery would be reduced—in some cases, substantially reduced—if Plaintiffs were not successful in any or all the above motions or arguments. For example, each Plaintiff's recovery would be a fraction of their maximum recovery if Kellogg prevailed on its argument regarding the proper method to calculate damages. Or if Plaintiffs failed to prove Kellogg acted willfully, Plaintiffs' recovery would be significantly reduced, and some KSRs would recover nothing. If Kellogg further proved it acted in good faith, recovery for what claims remained would be further reduced by half.

In short, Plaintiffs faced numerous risks in this litigation, each with serious consequences to the total recovery, and many risks resulting in no recovery at all for some, many, or all Plaintiffs. At the preliminary approval stage, the Court acknowledged that the outcome of each of these disputes "would affect the possible range of recovery and would also affect the risk of litigation faced by each party." Prelim. Order (ECF No. 294, PageID 2557). Further, Plaintiffs' recovery will not be reduced due to Plaintiffs' attorneys' fees and costs because Kellogg will pay those amounts separate from the fund. Given the multiple risks of litigation, and the resulting wide range of possible recovery for Plaintiffs, these factors weigh in favor of approval.

### 2.  The Parties Avoid Massive Burdens and Expenses with This Settlement

Although the Parties have been litigating this case for some time, it remains early in the litigation, with Plaintiffs' motion for conditional certification of the collective action still pending. As such, the Parties anticipate extensive litigation would continue were this settlement unsuccessful. Each of the potential risks listed in the above section is an issue that the Parties anticipate they would litigate through briefing and argument, many of which would require discovery, but for this Settlement. The complexity of the issues and risks, coupled with the experience and capabilities of counsel for both Parties, mean this matter would be hard-fought and each issue thoroughly litigated. Because the Parties have not yet engaged in merits discovery—although merits discovery had been plentiful in the *Thomas* case and in the parallel individual arbitration matters—settlement at this stage avoids significant costs and burdens on both Parties, not only in terms of trial and preparation, but also in terms of discovery production and review, as well as evidence retention for the duration of the litigation. Moreover, by settling this matter, many Opt-In Plaintiffs avoid the burden and expense of participating in discovery, including sitting for depositions and producing documents, and potentially participating in trial as a witness; and Kellogg avoids the burden and expense of its officers and representatives sitting for additional depositions, on top of those already taken by the Arbitration Claimants. Moreover, the settlement allows the Parties and the Court, including potential jurors, to avoid expending resources on trial in this matter, including the expense and time involved. Accordingly, this factor weighs in favor of approval.

### 3.  The Settlement is the Product of Arms-Length Bargaining, Negating the Possibility of Fraud or Collusion

As the Court highlighted when granting preliminary approval, this Settlement "is the result of arms-length bargaining (mediation with a retired federal judge) by experienced counsel. In the

Court's view, the risk that the proposed settlement is the result of fraud or collusion is minimal." Prelim. Order (ECF No. 294, PageID 2558). The same is true now at the final approval stage.

This settlement is the product of extensive arms-length negotiations, much of which occurred through and with a seasoned and respected mediator well-versed in the FLSA, Judge Rosen, including two all-day, in-person mediations. "The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) (citing *Hemphill v. San Diego Ass'n of Realtors*, 225 F.R.D. 616, 621 (S.D. Cal. 2005); *In re Toys R Us Antitrust Lit.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000)); *see also Westley v. CCK Pizza Co.*, 18 Civ. 13627, 2019 WL 5653403, at *3 (E.D. Mich. Oct. 31, 2019). Like in *Thomas,* Counsel for both Parties can confirm that the negotiations were hard fought. *See Hainey*, 617 F. Supp. 2d at 673. Accordingly, these factors weigh in favor of approval.

### D.  The Settlement's Release Provisions are Proper

Court's also review the scope of any releases in evaluating whether the settlement is reasonable. Generally, if the "released claims share the same integral facts as the settled claims," and "the released claims are adequately represented prior to settlement," then the courts find the releases to be proper. *See Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 900 (6th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005)). In the Sixth Circuit, "the question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a 'factual predicate' with the claims pled in the complaint." *Déjà Vu Servs.*, 925 F.3d at 900 (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009)).

Here, as the Court noted, the Settlement includes wage and hour releases for all participating Plaintiffs. *See* Prelim. Order (ECF No. 294, PageID 2558). The Settlement Agreement also includes an additional, general release for Named Plaintiffs, in exchange for their receiving service payments (which are discussed further below). *Id.* The release applicable to all participants is tailored to wage and hour claims and those claims that were raised or could have been raised in this case. Importantly, those who did not participate in the settlement, did not release any of their claims. The released claims, therefore, are only those that "share a 'factual predicate' with the claims pled in the complaint," *see Moulton*, 581 F.3d at 349, making the limited release "fair, reasonable, and consistent with the FLSA." Prelim. Order (ECF No. 294, PageID 2558).

### E.  The Service Awards to the Named Plaintiffs are Fair, Reasonable, and Consistent with the FLSA

The Parties also request that the Court approve the service awards of $7,500 to each Named Plaintiff. The settlement provides for the service awards, and the Notices informed all Opt-In Plaintiffs and Collective Members about the amount of service awards. No one objected. "Numerous courts have authorized incentive awards. These courts stress that incentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (collecting cases). Service awards "are fairly typical in class action cases [and] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (service awards appropriate in FLSA collective actions for same reasons as in Rule 23 class actions).

The service awards proposed here are consistent with the amounts approved by other courts in this Circuit. *See, e.g.*, *McFarlin v. Word Enters., LLC*, 16 Civ. 12536, 2020 WL 2745300, at *2 (E.D. Mich. May 27, 2020) (approving service awards of $10,000 and $5,000 to class representatives); *Daoust, v. Maru Rest., LLC*, 17 Civ. 13879, 2019 WL 2866490, at *5-6 (E.D. Mich. July 3, 2019) (awarding $5,000 to the named plaintiff to "recognize[] the risks" she faced "and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in the mediation") (collecting cases); *Barnes v. Winking Lizard, Inc.*, 18 Civ. 952, 2019 WL 1614822, at *6 (N.D. Ohio Mar. 26, 2019) (approving the "modest class representative award" of $7500). As the Notice explained, the service awards are for the Named Plaintiffs' risks, their representation of the other Plaintiffs, and for their time and efforts on behalf of the hundreds of KSRs who will recover unpaid overtime wages.

Like the service award in *Daoust*, service awards here, too, "are important to compensate [Named] plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred in becoming and continuing as a litigant, and any other burdens [they] sustained." 2019 WL 2866490, at *5-6. The Named Plaintiffs—Roseann Miracola, Scotty Poarch, and Mark Young—each stepped up to serve as representative plaintiffs on behalf of their fellow Kellogg KSRs at a crucial point in the litigation. At the time, the case was stayed in the District of Nevada while Kellogg and the original Named Plaintiff, Brian Smith, resolved the arbitrability of Smith's individual claim in arbitration. Once Smith withdrew his objection to the arbitrability of his individual claim, and his individual case proceeded in arbitration, Ms. Miracola, Mr. Poarch, and Mr. Young stepped up to lead this case for the benefit of the Opt-in Plaintiffs and entire putative Collective. Plaintiffs then moved to amend the complaint to add them as Named Plaintiffs and Representatives of the Collective. They took on the professional and reputational risk inherent in

16

adding one's name to a nationwide collective action suit, and they took on the responsibility of making decisions and acting on behalf of hundreds of others, whom the Named Plaintiffs would never even meet.

The Named Plaintiffs then were instrumental to Plaintiffs' efforts to conditionally certify the case as a collective action. They sat for deposition during Kellogg's pre-certification discovery, and maintained regular contact with Plaintiffs' Counsel to discuss case updates and litigation strategy. Most notably, Ms. Miracola, Mr. Poarch, and Mr. Young played a critical role throughout the mediations and settlement discussions. Importantly, they represented not only their own interests, but the interests of the Opt-In Plaintiffs and the FLSA Collective Members. Before the first mediation, the Named Plaintiffs, along with many of the Opt-In Plaintiffs participated in a conference call to discuss the mediation and risk calculations. Throughout the negotiation process, the Named Plaintiffs were involved in all decisions to accept or reject offers on behalf of the Opt-in Plaintiffs and FLSA Collective Members. Dunn Decl. ¶ 17 (ECF No. 292, PageID.2543) and 26 (ECF No. 292, PageID.2546). The Named Plaintiffs have approved the settlement the Parties ultimately reached.

The Court reviewed the service awards at the preliminary approval stage, and approved the awards of $7,500 to the Named Plaintiffs as "fair, reasonable, and consistent with the FLSA." Prelim. Order (ECF No. 294, PageID 2558). In recognition of the risks they took and the efforts they made on behalf of all Plaintiffs and Collective Members in this case, the Court should grant final approval for the "modest" award of $7500 to each Named Plaintiff along with the final approval of the settlement. *See Barnes*, 2019 WL 1614822.

17

## IV.    CONCLUSION

Thus, the Parties respectfully request that the Court:

1.   Grant final approval of the Parties' Settlement Agreement, including the gross settlement amount of $1,851,689.56, because the FLSA settlement (a) involves the resolution of a bona fide dispute over an FLSA provision and (b) is fair and reasonable;

2.   Grant final approval of the requested service awards of $7,500 to each of the three Named Plaintiffs;

3.   Grant final approval of the Settlement Administrator's costs of $33,479;

4.   Grant final approval of the settlement amount of $1,106,971.75, to be distributed to the Named and Opt-in Plaintiffs (Fund A);

5.   Grant final approval of the settlement amount of $688,738.81 and distribution methodology to the FLSA Putative Class (Fund B); and

6.   Grant final approval of the release of claims as provided in the Settlement Agreement for the 77 Named and Opt-in Plaintiffs listed in Exhibit 1, and the 494 FLSA Putative Class Members listed in Exhibit 2.

The issue of an award of attorneys' fees and costs to Plaintiffs' Counsel is addressed separately. *See* Plaintiffs' Motion for Attorneys' Fees and Costs (ECF No. 298), and Kellogg's opposition thereto. Plaintiffs' Reply is forthcoming.

Respectfully Submitted,

Dated: May 28, 2021                    *s/ Matt Dunn*
                                        Matt Dunn
                                        Lesley Tse
                                        Meagan M. Rafferty
                                        **GETMAN, SWEENEY & DUNN, PLLC**
                                        260 Fair Street

18

Kingston, NY 12401
Telephone: (845) 255-9370
Fax: (845) 255-8649
email: mdunn@getmansweeney.com

*Attorneys for Plaintiffs*

Dated: May 28, 2021

<u>*s/ James N. Boudreau*</u>
James N. Boudreau
Christiana Signs
**GREENBERG TRAURIG, LLP**
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 988-7833
Fax: (215) 988-7801
Email: boudreauj@gtlaw.com

*Attorneys for Defendants*